# In the United States Court of Federal Claims

No. 22-120
Filed: May 9, 2022
Reissued: May 16, 2022[†]

---

**THE BIONETICS CORPORATION,**

        *Plaintiff,*

**v.**

**THE UNITED STATES,**

        *Defendant,*

*and*

**LEO TECH LLC,**

        *Intervenor-Defendant.*

---

*Anthony J. Mazzeo* and *Michael L. Sterling*, Vandeventer Black LLP, Norfolk, VA, for Plaintiff.

*Patrick Angulo*, Trial Attorney, with *Douglas K. Mickle*, Assistant Director, *Patricia M. McCarthy*, Director Commercial Litigation Branch, *Brian M. Boynton*, Principal Deputy Assistant Attorney General, Civil Division, U.S. Department of Justice, Washington, D.C., and *Nicholas J. Illif Jr.*, Trial Attorney serving Of Counsel, Judge Advocate General's Corps, United States Air Force, for Defendant.

*Jon Davidson Levinson*, *W. Brad English*, and *Emily J. Chancey*, Maynard, Cooper & Gale, PC, Huntsville, AL, for Intervenor-Defendant.

## MEMORANDUM OPINION AND ORDER

**TAPP, Judge.**

This dispute centers on The Bionetics Corporation's ("Bionetics") data-entry error. As a result of that error, the Air Force excluded Bionetics from consideration of a multi-million-dollar contract award. Although Bionetics' error is costly, the solicitation explicitly reserved the Air Force's discretion whether to allow Bionetics to correct its error. The Air Force's exercise of that discretion does not violate the Administrative Procedure Act and, therefore, the Court must deny

---

[†] This Opinion was filed under seal. On May 16, 2022, the parties filed a joint notice proposing redactions of protected information. (ECF No. 39). This public version reflects those redactions.

Bionetics' protest. To that end, Bionetics' Motion for Judgment on the Administrative Record (Pl.'s Mot. for J. on the AR ("MJAR"), ECF No. 25) is denied, and both the United States' and Leo Tech LLC's cross-motions for judgment on the Administrative Record (USA xMJAR, ECF No. 27; Int.'s xMJAR, ECF No. 28) are granted.[1]

## I.    Background

This protest stems from the Air Force's Request for a Proposal (the "RFP" or the "Solicitation")[2] to provide all personnel, equipment, tools, materials, supervision, and other items and services necessary to perform a ground equipment project at Hill Air Force Base in Utah and Davis-Monthan Air Force Base in Arizona. (Administrative Record ("AR") at 1290–2085 (the RFP), 4304–4441 (Amendment 003), ECF Nos. 23–24). Bionetics is the incumbent, currently performing under the predecessor contract. (*See e.g.*, AR 1219). The Air Force awarded the new contract to Leo Tech, LLC. (AR 8075–8078).

A key provision of both the predecessor contract and the protested contract is the requirement that employee wages comply with the Collective Bargaining Agreement ("CBA") incorporated by operation of the McNamara-O'Hara Service Contract Act ("SCA"). (AR 1724). The McNamara-O'Hara SCA requires contractors to pay service employees prevailing wages set by the United States Department of Labor or a CBA. 41 U.S.C. §§ 6701–6707. Bionetics submitted a proposal indicating it would comply with the CBAs in effect at Hill Air Force Base and Davis-Monthan Air Force Base. (AR 2637).

However, after notifying Bionetics that the Air Force would award the contract to Leo Tech, the Air Force also informed Bionetics that its price proposal was rejected because it was incomplete. (AR 8075–78, 8106). The Solicitation's completeness requirement stated:

> 2.1.1.1 Completeness – The Government will review the pricing submissions for completeness *and compliance with Section L* - Instructions to Offerors. Completeness is submitting an offeror's pricing proposal with all the required portions filled out entirely. Incomplete price submissions may not be evaluated and the proposal may be eliminated from the competition.

(AR 4376 (emphasis added)).

Section L paragraph 2.2 contained the RFP's requirement that "[a]ll labor categories included in the CBA must be proposed at a minimum to the CBA requirements" and must be "escalated through all out years[.]" (AR 4357). Paragraph 2.2 also stated that the Air Force reserved "the right to remove contractors from the competitive range for not escalating all labor rates throughout the years and ensuring CBA rates are [met] for the years negotiated." (*Id*.). The Air Force explained that Bionetics' proposal was incomplete because two of Bionetics' wage

---

[1] To the extent the United States buttresses its Motion for Judgment on the Administrative Record with a Motion to Dismiss for lack of standing, the Motion to Dismiss is denied as explained below.

[2] Solicitation No. FA8224-21-R-002.

rates did "not match or exceed the negotiated CBA rate[.]" (AR 8137). The Air Force acknowledged that, although Bionetics' price proposal was not blank, Bionetics "failed to meet [the requirements of] Section L paragraph 2.2" of the RFP. (AR 8138 ("Bionetics was found to not be in compliance with Section L, which is required for completeness.")).

However, despite labeling Bionetics' price proposal as incomplete, the Air Force was still able to assess Bionetics' price proposal, specifically with respect to the Total Evaluated Price factor, and determined the proposed price was both reasonable and balanced. (AR 7515–16). The RFP called for a lowest price technically acceptable procurement conducted pursuant to FAR §§ 15.101-2 and 15.3, as well as Department of Defense Source Selection Procedures and the Air Force Federal Acquisition Regulations Supplement. (AR 4375). The Solicitation provided that the three lowest-priced proposals would be evaluated for technical acceptability and the contract would be awarded to the offeror proposing the lowest total evaluated price. (AR 4375). Bionetics' proposal was the lowest-priced proposal of those considered both reasonable and balanced, offering over a ███████ discount versus the next lowest-priced proposal. (AR 7515–16).[3]

The Air Force reserved the discretion to either award without discussions or conduct discussions if deemed necessary. (AR 4375–76). The Air Force ultimately determined that discussions were unnecessary. (AR 7521). The Solicitation, Section M, also reserved the Air Force's discretion to consider the "correction potential" of proposals. (AR 4375) ("The judgment of such 'correction potential' is within the sole discretion of the Government."). The Air Force did not explain its decision to forgo correction potential analysis, but it is implicit from the Source Selection Decision Document that the Air Force declined to exercise its discretion. (*See* AR 7512 *et seq.*).

After the Air Force notified Bionetics that Leo Tech would receive the contract award, Bionetics requested a debriefing. (*See* AR 8079). In that debriefing, the Air Force reiterated that Bionetics' price proposal failed to satisfy the requirements of Section L with respect to the noncompliant wages and was therefore deemed incomplete. (AR 8138). Following the debriefing, Bionetics submitted multiple iterations of the same general question: Why did the Air Force decline to exercise its discretion to either clarify or consider the correction potential of Bionetics' noncompliant price proposal? (AR 8137–46 (Question Nos. 13, 14, 15, 17, 18, 19)). In its response, the Air Force cited its discretion to conduct or avert *discussions* but declined to explain why it did not seek *clarifications* or evaluate the correction potential. (*Id.*). Again, that decision was within the Air Force's sole discretion. (AR 4375).

The rates that the Air Force cites as being noncompliant with the CBA appear for an Aerospace Ground Equipment ("AGE") Worker at Davis-Monthan Air Force Base and a Supply Technician at Hill Air Force Base. (AR 8106, 8137). For the AGE Worker, Bionetics' price volume proposed a rate less than the prevailing wage established by the Davis-Monthan CBA.

---

[3] However, the Air Force evaluated Bionetics' proposal using the admittedly erroneous labor rates. (*See* AR 4357 ("The sum of these notional hours applied to the offeror's proposed hourly rate for labor categories will determine the [Total Evaluated Price].")).

(*Compare* AR 4438 ($31.71, CBA rate) *with* AR 4947 ███████████████████).[4] The Air Force explained that Bionetics' price proposal had not met the requirements of completeness because the rate for that worker "does not meet the CBA requirements." (AR 7328). For the Supply Technician, Bionetics' price volume, again, proposed a rate less than the prevailing wage set by the Hill CBA. (*Compare* AR 1618 ($25.77, CBA rate) *with* AR 4946 ███████████████ ███████). The Air Force, again, explained that Bionetics' proposal failed to "meet the CBA rate requirements for the Supply Technician [at] Hill[.]" (AR 7328). Therefore, the Air Force found that Bionetics' proposal "[had] not met the requirements of complete [because] [a]ll elements of the [Total Evaluated Price] were not completed." (*Id.*). Consequently, the Air Force found that Bionetics' price proposal was unacceptable, despite being balanced and reasonable. (*Id.*).

Bionetics protested the Air Force's decision at the Government Accountability Office ("GAO"). (AR 8585 *et seq.*). The GAO denied the protest, finding Bionetics' claims unsupported by the evidence. (AR 9130, 9131). Bionetics now challenges the Air Force's decision, requesting declaratory and injunctive relief, an order directing the Air Force to accept Bionetics' proposal as complete and evaluate it for award, and costs and attorney's fees. (Pl.'s MJAR at 30–31). The Court declines to grant relief.

## II.   Analysis

The Court's review of procurement protests is governed by the Administrative Procedure Act ("APA"). 28 U.S.C. § 1491(b)(4). Under the APA, agency actions must be set aside if they are arbitrary, capricious, an abuse of discretion, contrary to law, or unsupported by substantial evidence. 5 U.S.C. § 706. In reviewing agency procurement decisions under the APA, the court may set aside a decision if the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or the decision is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Ala. Aircraft Indus., Inc. v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

Where, as here, the parties have filed cross-motions for judgment on the administrative record, RCFC 52.1 provides a procedure for parties to seek the equivalent of an expedited trial on a "paper record, allowing fact-finding by the trial court." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005). Unlike summary judgment standards, genuine issues of

---

[4] Although Bionetics has described these errors as transpositional in nature, (*see e.g.*, Pl's MJAR at 9–10), the Court is skeptical. First, Bionetics has offered no explanation as to what figure the listed rates were transposed with and, after comparing Bionetics' proposal to the CBA wage rate appendices, the Court is unable to construct one. (*Id.*). Second, Bionetics has not offered a declaration from any employee or executive either claiming that the rates were erroneously transposed or identifying the rates Bionetics intended to propose. *See Medline Indus., Inc v. United States*, 155 Fed. Cl. 522, 538 n.12 (2021) ("Declarations from company executives, although not generally part of the Administrative Record, are appropriate vehicles for protestors to demonstrate competitive prejudice.") (collecting cases).

material fact do not preclude a judgment on the administrative record. *See id.* at 1355–56. Questions of fact are resolved by reference to the administrative record. *Id.* at 1356.

Bionetics alleges that the Air Force's decision violated the APA in several ways. First, Bionetics argues that its price proposal met the Solicitation's requirements for "completeness," thus the Air Force's determination that the proposal was incomplete, and its exclusion of the proposal on that basis, was erroneous. (Pl.'s MJAR at 19–21). Second, Bionetics argues that the Air Force erred by confusing clarifications with discussions, and in doing so, erred by failing to conduct clarifications. (*Id*. at 21–25). Third, Bionetics argues that the Air Force confused payments to personnel with charges to the government, erroneously concluding that Bionetics could not charge the government a rate lower than the CBA when, in fact, the CBA only required Bionetics to pay prevailing wages. (*Id*. at 26–27). The Court will address each of these protest grounds in turn but must first address the United States' contention that Bionetics lacks standing. (USA xMJAR at 9–19).

*A.  Bionetics has standing to bring this action.*

Standing is a threshold question in every case, and the plaintiff bears the burden to demonstrate federal jurisdiction. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). In addition to the requirements of standing imposed by Article III of the Constitution, government procurement protestors must satisfy the standing requirements of 28 U.S.C. § 1491(b)(1), which are even more stringent. *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009). Importantly, under 28 U.S.C. § 1491(b)(1), a protestor must "establish that it (1) is an actual or prospective bidder, and (2) possesses the requisite direct economic interest." *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307 (Fed. Cir. 2006). The second prong, at issue here, queries whether a protestor had a "substantial chance" to receive the contract award but for the "*alleged*" procurement process error. *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003) (emphasis added). The question is whether, "if successful on the merits of [its] bid protest[,]" the protestor would have had a substantial chance of securing the contract." *Id*.

The United States argues that Bionetics lacked a substantial chance to receive the contract award, and thus lacked standing, because Bionetics failed to submit an acceptable proposal. (USA xMJAR at 11). The United States contends that the Solicitation's labor rate requirements were a material term and, because Bionetics' proposed rates failed to conform with the Solicitation's requirements, Bionetics' proposal was facially unacceptable and therefore Bionetics lacks standing. (*Id*.). The United States' argument invokes the ancient chicken-or-the-egg dilemma, as both the standing and merits inquiries essentially present the same questions: was Bionetics' proposal complete, and were its erroneous labor rates a material error?

Should the Court accept the United States' argument, a protestor would virtually always be stripped of standing should the Court ultimately determine that the protestor's claims fail on the merits. The United States' argument engenders confusion between the prejudice inquiry relevant to the merits of a case and the prejudice inquiry relevant to standing at the jurisdictional stage. *See WaveLink, Inc. v. United States*, 154 Fed. Cl. 245, 263 (2021) ("Although the prejudice inquiry for standing purposes is similar to the merits prejudice inquiry, at the early, jurisdictional stage the actual lawfulness of the contested agency decisions is wholly immaterial.

Rather, this showing turns entirely on the impact that the alleged procurement errors had on a plaintiff's prospects for award, taking the allegations as true.") (cleaned up). To assess prejudice (i.e., injury) for standing purposes, the Court must accept Bionetics' merits arguments as correct. *Info. Tech. & Applications Corp.*, 316 F.3d at 1319; *L-3 Commc'ns Corp. v. United States*, 99 Fed. Cl. 283, 289 (2011) ("[T]he prejudice determination for purposes of standing assumes all non-frivolous allegations to be true, whereas the post-merits prejudice determination is based only on those allegations which have been proven true."). In doing so, the Court has assured itself that Bionetics has standing to bring this protest because Bionetics argues that its proposal "was complete, responsive, and compliant with the terms of the solicitation and had a significantly lower price than the Awardee." (*E.g.*, Pl.'s Reply at 2, ECF No. 30). Although the Court concludes that Bionetics' claims are not meritorious, the Court rejects the United States' contention that Bionetics lacks standing.

> B. *The Air Force's determination that Bionetics' proposal was incomplete did not violate the APA.*

The Court finds that the Air Force did not violate the APA in rejecting Bionetics' proposal as incomplete for two reasons. First, Bionetics' proposal failed to include CBA-compliant labor rates, a requirement of completeness under the terms of the Solicitation, Section L. Second, Section L's labor rate requirements were material terms of the Solicitation.

The Air Force found Bionetics' proposal incomplete under Section L. (AR 8075–78, 8106). Bionetics contends that the Air Force's determination was in error because in Bionetics' proposal, "[t]here were no blanks." (Pl.'s MJAR at 19). However, the Solicitation's "completeness" requirement demanded more than simply entering something in each field; it demanded that pricing submissions comply with Section L:

> 2.1.1.1 Completeness – The Government will review the pricing submissions for completeness *and compliance with Section L* - Instructions to Offerors. Completeness is submitting an offeror's pricing proposal with all the required portions filled out entirely. Incomplete price submissions may not be evaluated and the proposal may be eliminated from the competition.

(AR 4376 (emphasis added)). In turn, Section L demanded pricing compliant with the CBA: "[a]ll labor categories included in the CBA must be proposed at a minimum to the CBA requirements" and must be "escalated through all out years[.]" (AR 4357). Therefore, if a proposal failed to propose labor rates compliant with the CBAs in effect at Hill and Davis-Monthan Air Force bases, the Air Force could deem a proposal incomplete. (AR 4376 ("Incomplete price submissions . . . may be eliminated[.]")). The Solicitation's terms are clear: "completeness" included compliance with the CBA labor rates.

The Air Force's discretion to reject incomplete proposals based on noncompliance with the CBA labor rates was also clear: "The government reserves the right to remove contractors from the competitive range for not escalating all labor rates throughout the years and ensuring CBA rates are [met] for the years negotiated." (AR 4324; *see also* AR 4317 ("Offerors are cautioned that any noncompliance with the terms and conditions of the Request for Proposal (RFP) may cause the offeror's proposal to be determined not eligible for award.")). Bionetics'

proposal was the only proposal that failed to propose CBA-compliant labor rates.[5] (AR 8695 (decision of the GAO finding that "[a]ll offerors were compliant with the CBA requirements, except Bionetics.")).

Although Bionetics' proposal indicated it would comply with the CBA, Bionetics concedes that, in fact, its proposal did not comply. (Pl.'s MJAR at 3, 9). The United States asserts that the CBA minimum labor rates were a material term of the Solicitation. (USA xMJAR at 9). Bionetics refutes that claim only by pointing to the conclusory statement in its proposal that it would comply with the CBA. (Pl.'s Reply at 4 (citing AR 2637)). Bionetics adds that, because it admits it erred in transcribing the correct rates, the Air Force should have relied on that conclusory statement rather than the erroneous rates Bionetics' "inadvertently included[.]" (*Id*. at 5). The Court agrees with the United States that the CBA labor rate requirements were a material term of the Solicitation, and Bionetics' failure to include compliant rates in its proposal justifies the Air Force's rejection.

"[A] proposal that fails to conform to the material terms and conditions of the solicitation should be considered unacceptable[.]" *E.W. Bliss Co. v. United States*, 77 F.3d 445, 448 (Fed. Cir. 1996). Terms are material when they (1) are express in the solicitation and (2) serve a substantive purpose. *ManTech Advanced Sys. Int'l, Inc. v. United States*, 141 Fed. Cl. 493, 506 (2019). "A substantive purpose is something important to the government's evaluation of the offer, is binding on the offeror, or has a more than negligible impact on the price, quantity, or quality of the bid." *Id*. at 506–07 (collecting cases). This Court has previously held that "so-called 'mandatory minimum requirements' are always—and by definition constitute—material solicitation requirements." *DigiFlight, Inc. v. United States*, 150 Fed. Cl. 650, 657 (2020), *appeal dismissed,* No. 2021-1486, 2021 WL 6337494 (Fed. Cir. Sept. 22, 2021). "A proposal's failure to satisfy a material, or mandatory minimum, solicitation requirement is a material error." *Id*. The Solicitation imposed mandatory minimum labor rates in responsive pricing proposals, therefore, inclusion of CBA-compliant rates was a material term. Bionetics failed to propose those mandatory minimums, despite its conclusory statement alleging it was doing so, and thus failed to provide reasonable certainty as to the terms on which the Air Force could accept Bionetics' proposal.

The Solicitation stated that the proposed labor rates were part of contract line-item unit pricing that would be "contractually binding." (AR 4377). Bionetics' noncompliance and the conflict between its conclusory statement and the labor rates it proposed created ambiguity that precluded any reasonable certainty as to the material terms of a potential contract. *See Pac. Gas & Elec. Co. v. United States*, 838 F.3d 1341, 1355–56 (Fed. Cir. 2016) (collecting treatises illustrating that every contract must contain reasonable certainty as to its material terms); *Asset Prot. & Sec. Servs., L.P. v. United States*, 5 F.4th 1361, 1366 (Fed. Cir. 2021) (quoting *Pac. Gas & Elec. Co.*, 838 F.3d at 1355–56) ("Given the mismatch between the terms of [the agency's]

---

[5] Originally, four offerors failed to comply with the CBA. (AR 8693). Recognizing the issue, the Air Force amended the Solicitation to add cautionary language (which it underlined, presumably for emphasis) and extend the proposal deadline. (*Id*.; *compare* AR 4324 (Amendment 0003) *with* AR 1559 (original solicitation) *and* AR 1856 (Amendment 0001); *see also* AR 4317).

solicitation and [the protestor's] bid, any agreement formed would fail to 'satisfy the requirement of reasonable certainty applicable to the essential terms of all contracts.'").

Additionally, the Air Force used the proposed labor rates to compute the Total Evaluated Price, a key metric in the award decision. (AR 4376–4377). Bionetics argues that, in the absence of CBA-compliant rates, the Air Force should have assumed, based on its blanket statement, that Bionetics intended to propose rates at the CBA minimum. (Pl.'s MJAR at 3, 9; Pl.'s Reply at 4, 5). However, the logic of that argument is belied by the pricing of other proposals. For the two positions at issue, the AGE Worker and the Supply Technician, the CBA minimum labor rates for 2021 were $31.71 and $25.77 respectively. (AR 4438, 1618). Many of the other offerors' proposals listed labor rates exceeding the minimum rates to varying degrees. (*See, e.g.*, AR 6822–23, 6911–6912, 6995–96). It does not follow that the Air Force should have simply assumed, based on the blanket statement, that Bionetics intended to propose wages at the minimum labor rate.[6] Under Bionetics' flawed logic, had it completed all fields by identifying the labor rates as "TBD," the Air Force could have accepted Bionetics' proposal as complete simply by assuming that Bionetics would use the CBA minimum labor rates. But the Air Force evaluated its Total Evaluated Price metric almost entirely on the contractually binding labor rates proposed by the offerors. (AR 4376–77). Therefore, the Air Force was not free to ignore the proposed rates or substitute its assumptions and inferences for the labor rates the offerors listed in the pricing proposal.

Bionetics failed to comply with the Solicitation's completeness requirements that demanded mandatory minimum labor rate proposals compliant with the CBA. Had the Air Force ignored Bionetics' failure and awarded it the contract anyway, there would have been ambiguity with respect to material contract terms. Therefore, the Air Force was well within its discretion to reject Bionetics' proposal as incomplete and did not otherwise violate the APA in doing so.

### C.   *The Air Force did not violate the APA by declining to conduct clarifications.*

Bionetics next argues that the Air Force erroneously conflated "clarifications" with "discussions" in addressing the labor rate error contained in Bionetics' proposal. (Pl.'s MJAR at 21). That argument depends in large part on Bionetics' earlier contention, which the Court rejects, that the labor rate error was immaterial and thus an appropriate topic for clarifications. (*Id*. at 22 ("The minor issues with Bionetics' proposal are clear clerical errors which should have been addressed through clarifications.")).

"Clarifications are limited exchanges, between the Government and offerors, that may occur when award without discussions is contemplated." FAR § 15.306(a)(1). Through "clarifications," the agency may give an offeror "the opportunity to clarify certain aspects" of a proposal, such as "minor or clerical errors." FAR § 15.306(a)(2). "Clarifications are not to be used to cure proposal deficiencies or material omissions, materially alter the technical or cost elements of the proposal, or otherwise revise the proposal." *Dell Fed. Sys., L.P. v. United States*,

---

[6] Indeed, as the United States points out, Bionetics represented only that its proposed labor rates were "*based on*" the current CBA, not that its labor rates would *comply* with the CBA. (AR 2637 (emphasis added); USA Reply at 4, ECF No. 32).

906 F.3d 982, 998 (Fed. Cir. 2018) (quoting *JWK Int'l Corp. v. United States*, 52 Fed. Cl. 650, 661 (2002)). "It is therefore always reasonable for a [Contracting Officer] not to request clarifications of a proposal that is materially deficient." *Mission1st Grp., Inc. v. United States*, 144 Fed. Cl. 200, 216 (2019). Price terms are nearly always material to a contract, but especially so in a lowest price technically acceptable procurement. *See Furniture by Thurston v. United States*, 103 Fed. Cl. 505, 518 (2012) ("A solicitation term is 'material' if failure to comply with it would have a non-negligible effect on the *price*, quantity, quality, or delivery of the supply or service being procured") (emphasis added); *Blackwater Lodge & Training Ctr., Inc. v. United States*, 86 Fed. Cl. 488, 505 (2009) (holding that a substantive provision of the RFP has "more than a negligible impact on the *price*, quantity, quality, or delivery of the subject of the bid") (emphasis added); *ST Net, Inc. v. United States*, 112 Fed. Cl. 99 109–110 (2013) (prices are binding on the offeror, therefore not minor or clerical in nature).

As the Court has explained, Bionetics' proposal failed to comply with the Solicitation's demand to list CBA-compliant labor rates—a material price term of the potential contract. Moreover, the Solicitation explicitly reserved the Air Force's discretion whether to conduct discussions or consider the "correction potential" of proposals. (AR 4375–76, 7521); *see also* FAR § 15.305(a)(3) ("Award may be made without discussions if the solicitation states that the Government intends to evaluate proposals and make award without discussions."). The Air Force declined to seek clarifications because Bionetics' proposal was materially deficient with respect to price—specifically the labor rate. (AR 7512 *et seq*.). Therefore, the Air Force did not act in contravention of the APA by demurring on clarifications with respect to Bionetics' material labor rate error. *Mission1st Grp., Inc.*, 144 Fed. Cl. at 216.

> *D. The Air Force did not violate the APA when it determined Bionetics' proposal failed to meet the Solicitation's prevailing wage requirements.*

Bionetics asserts the Solicitation required offerors to propose prices at which it would *charge* the Air Force for labor but did not contain a requirement to list the rates offerors would *pay* employees. (Pl.'s MJAR at 26 ("Bionetics was entitled to charge any amount it chose to the government as its ceiling rate, so long as it complied with its obligation to pay at least the CBA rate minimums to its nonexempt employees.")). The import of this argument, Bionetics urges, is that the Air Force erred by rejecting Bionetics' proposal because the Air Force failed to recognize that Bionetics would "pay" employees the minimum CBA rate but would presumably take a loss by "charging" the Air Force a lower labor rate. (*Id*. at 27).

That argument lacks merit. The Solicitation, Section L, demanded offerors propose labor rates "at a minimum to the CBA requirements." (AR 4357). This requirement is clear. *C.f. Banknote Corp. of Am. v. United States*, 365 F.3d 1345, 1353 (Fed. Cir. 2004) ("If the provisions of the solicitation are clear and unambiguous, they must be given their plain and ordinary meaning."). The Solicitation did not diffrentiate between charges and employee payments; there was a single set of spreadsheets for offerors to propose labor rates. (AR 1882, 1887). There was nowhere else for Bionetics to list a second set of CBA-compliant rates at which Bionetics would "pay" its employees. (AR 1882 ("All labor hour rates shall represent direct labor costs[.]") (capitalization removed)).

Bionetics, as well as every other offeror, understood that the Solicitation requested the labor rate at which the offerors would both charge the Air Force as well as pay the corresponding employees. Bionetics' understanding of the Solicitation's clear and unambiguous meaning is evident from the fact that Bionetics now acknowledges its error, rather than denote in its proposal the loss-taking strategy Bionetics has innovated for the purposes of this litigation. (*See* AR 8591 (Bionetics arguing to the GAO that "[s]uch issues are clear clerical errors. The Agency takes the position that Bionetics went through the expense and labor of producing a proposal, only to intentionally submit nonconforming labor rates. That is illogical.")). That argument relies on an unreasonable interpretation of the Solicitation's plain language and structure. Conversely, the Air Force's interpretation—and consequently its rejection of Bionetics' proposal—was reasonable, rational, and otherwise in compliance with APA standards.

### III.   Conclusion

Bionetics has standing to bring this protest, but the protest lacks merit. The Air Force acted in accordance with the APA in disqualifying Bionetics' proposal from consideration and declining to conduct clarifications. Accordingly, the Court orders the following:

(1) The Bionetics Corporation's Motion for Judgment on the Administrative Record, ECF No. 25, is **DENIED**.

(2) The United States' Cross-Motion for Judgment on the Administrative Record, ECF No. 28, is **GRANTED IN PART**.

(3) Leo Tech LLC's Cross-Motion for Judgment on the Administrative Record, ECF No. 29, is **GRANTED**.

(4) The parties are ordered to meet and confer regarding the necessity of redactions to this Opinion. On or before May 23, 2022, the United States is **ORDERED** to file a Notice that contains a statement indicating whether the parties seek redactions to the public version of this Opinion. That Notice must represent whether the United States has discussed the matter with counsel for all other parties and the extent of agreement as to the redacted content. The proposed redactions must be reflected in a PDF attached as an exhibit to that Notice.

**IT IS SO ORDERED.**



s/      David A. Tapp____
DAVID A. TAPP, Judge